## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY CLARK<br>9 Laurel Street<br>Lewistown, PA 17044<br><br>      Plaintiff,<br>  v.<br><br>GEISINGER HEALTH SYSTEM<br>100 North Academy Ave.<br>Danville, PA 17822<br>    and<br>GEISINGER CLINIC d/b/a GEISINGER<br>MEDICAL CENTER<br>100 North Academy Ave.<br>Danville, PA 17822<br>    and<br>GEISINGER HEALTH CARE,<br>65-FORWARD<br>293 Patriot Lane<br>State College, PA 16803<br>    and<br>STEPHANIE PACOVSKY<br>100 North Academy Ave.<br>Danville, PA 17822<br>    and<br>TOYIN ALAIYEGBAMI<br>100 North Academy Ave.<br>Danville, PA 17822<br><br>      Defendants. | CIVIL ACTION<br><br>No.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Kimberly Clark (*hereinafter* referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Defendant Geisinger Health System ("GHS"), Geisinger Clinic d/b/a Geisinger Medical Center ("GC"), Geisinger Health Care, 65 Forward ("GHC"), Stephanie Pacovsky and Toyin Alaiyegbami (*hereinafter* referred to collectively as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA"- 29 U.S.C. §2601, §2611-2615, *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA").[1]  Plaintiff was unlawfully terminated and not re-hired by Defendants, and she suffered damages more fully described/sought herein.

**JURISDICTION AND VENUE**

2. Plaintiff resides in and is a citizen of Pennsylvania.

3. Upon information and belief, Defendants are incorporated under the laws of Pennsylvania with headquarters and/or principal places of business in Pennsylvania.

4. This action is being initiated pursuant to Federal laws (ADA and FMLA) and therefore, the United States District Court for the Middle District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

5. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying

---

[1] Plaintiff will seek to amend her Complaint to add PHRA claims once those claims are administratively exhausted in or about November 2023.

the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

6. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

7. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Plaintiff is an adult individual residing at the address set forth in the above-caption.

10. Defendant GHS is a non-profit regional health-care provider and oversees Geisinger Clinic and Geisinger Health, 65-Forward.

11. Defendant GC is a health-care clinic located in Danville, PA that provides adult hematology and oncology services.

12. Defendant GHC is a branch of GHS that provides medical care to seniors.

13. Defendants should be considered Plaintiff's single, joint and/or integrated employer because each Defendant had control over the terms and conditions of Plaintiff's employment. For example:

    a. Defendant GC paid Plaintiff and this entity appears on her pay stubs. Thus, Defendant GC controlled the terms and conditions of Plaintiff's compensation;

    b. Defendant GHS oversees Defendant GC and was responsible for supervision and oversight of Plaintiff. GHS also provided Plaintiff benefits and policies;

    c. Defendant GHC supervised many of Plaintiff's day-to-day activities and Plaintiff physically worked at this entity;

    d. Defendants have common and/or overlapping ownership, management, human resources, financial and supervisory personnel.

14. Defendants Pacovsky is a high-level manager of Defendants who managed Plaintiff, controlled the terms and conditions of her employment and committed and/or was involved in the discrimination and retaliation set forth herein.

15. Defendant Alaiyegbami is a high-level HR Manager of Defendants who oversaw Plaintiff's employment with Defendants, controlled the terms and conditions of Plaintiff's employment (through oversight and application of policies), was responsible for ensuring compliance with the FMLA and ADA and committed and/or was involved in the discrimination and retaliation as set forth herein.

16. At all times relevant herein, Defendants acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

17. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

18. Plaintiff is a Registered Nurse ("RN") and a graduate of Geisinger-Lewistown Hospital School of Nursing.

19. Plaintiff was initially hired by Defendants in or about August 2014.

20. Plaintiff continued to work for Defendants for more than eight (8) years, until her unlawful termination in or about November 2022.

21. Plaintiff worked for Defendants as a full-time RN.

22. From in or about August 2014 to in or about September 2021, Plaintiff worked as an RN in the oncology department at Defendants' Lewistown, PA Hospital location.

23. Plaintiff was qualified for this job, as she possesses the relevant skill, experience and education for it.

24. In this position, Plaintiff was primarily supervised by Karen Napikoski (Nursing Operations Manager).

25. Plaintiff performed well in her role, was issued good performance feedback, satisfactory performance evaluations and merit-based raises.

26. Since at least 2019, Plaintiff has suffered from several serious medical conditions, including but not limited to, depression, anxiety, attention deficit hyperactivity disorder ("ADHD"), cancer-related genetic mutations, for which she has obtained medical treatment and been prescribed medications.

27. Plaintiff has treated with medical doctors as well as mental health professionals regarding these medical conditions.

28. Plaintiff's medical conditions interfere with and limit Plaintiff's daily activities, including limiting her thinking, concentrating, focusing, listening, talking, performing daily chores and, at times, working.

29. In or about 2019, Plaintiff informed Napikoski about her medical conditions and requested FMLA leave and reasonable accommodations (including periodic time off for her medical conditions).

30. In or about 2019, Plaintiff was approved for and took FMLA-qualifying intermittent FMLA leave.

31. Throughout 2019 and 2020, Plaintiff used intermittent FMLA-approved leave to treat her medical conditions.

32. In 2019 and/or 2020, Plaintiff was subjected to ongoing derogatory and offensive comments from Napikoski regarding her medical conditions and use of FMLA leave, including but not limited to being told "you used a lot of FMLA," "you frequently used FMLA," "you're absent a lot," and "you're always out for some medical issue."

33. In or about late 2020, in response to Plaintiff informing Napikoski that her depression condition had been exacerbated by the recent death of her sister and her father being diagnosed with advanced metastatic cancer, Napikoski told Plaintiff, "just because you have family members who are dying doesn't mean your attendance should be affected. Both of my parents died six months apart and it didn't interfere with my attendance or my job."

34. Napikoski also made negative comments about Plaintiff's use of FMLA leave in performance evaluations she issued to Plaintiff.

35. In or about October 2020, Plaintiff's medical conditions worsened and, as a result, she requested a medical leave of absence.

36. Plaintiff's request was granted and she was out of work on medical leave from in or about October 2020 to September 2021.

37. Plaintiff returned to work in or about September 2021.

38. Upon her return to work, Plaintiff transitioned to an RN position in Defendants' outpatient clinic, in the Geisinger Health 65-Forward Program.

39. From in or about September 2021 to November 2022, while she worked in Defendants' outpatient clinic, Plaintiff was primarily supervised by Devin Rhodes (Operations Manager of Western Region) and then later by Stephanie Pacovsky (Operations Manager of Eastern Region).

40. In or about the Spring of 2022, Plaintiff disclosed her medical conditions to Rhodes and Pacovsky as well as some of her colleagues, primarily to alert them to her need for medical-related absences and an upcoming surgery.

41. During Plaintiff's work in Defendants' outpatient clinic, she was subjected to negative treatment and comments by Defendants' management regarding her medical conditions and need for medical leave, including being told, "I don't know if it's your ADHD or not, but you're a slow learner" and other derogatory comments.

42. Plaintiff also observed that Defendants' management spoke to and interacted with her in a rude and disrespectful way, especially compared to her non-disabled colleagues.

43. On or about June 21, 2022, on the very first day that Pacovsky formally became Plaintiff's supervisor, Pacovksy issued Plaintiff an unwarranted Performance Improvement Plan ("PIP").

44. Plaintiff was shocked to receive this PIP for several reasons, including that she had not been issued any prior progressive discipline and Pacovsky had not observed her work such that there was no basis for Pakovsky to conclude Plaintiff had any performance deficiencies.

45. The PIP contained allegations that were false and/or exaggerated.

46. Pacovsky assured Plaintiff that she would meet with Plaintiff to check in on the status of her compliance with the PIP and to assist her in completing it.

47. However, Pacovsky did not meet or otherwise assist Plaintiff in completing the PIP.

48. Nonetheless, Plaintiff continued to perform her job satisfactorily and complied with the terms of the PIP.

49. In or about June 2022, Plaintiff expressed concerns to Pacovsky as well as Defendants' HR department that she felt like she was being discriminated against because of her medical issues and need for medical leave.

50. To Plaintiff's knowledge, Defendants failed to investigate or otherwise remedy her complaints.

51. In or about late June and/or early July 2022, Plaintiff requested, was approved for and took an FMLA-qualifying medical leave.

52. Plaintiff took FMLA leave from on or about July 1, 2022 to August 4, 2022.

53. Upon information and belief, during Plaintiff's legally protected medical leave, Defendants hired another RN to replace her.

54. In or about early August 2022, when Plaintiff attempted to return to work, she was met with hostility by Defendants, including but not limited to Defendants Pacovsky and Alaiyegbami, by being told she was required to submit a fitness for duty evaluation, despite that Defendants had not informed her of this alleged requirement before she began her FMLA leave.

55. Thereafter, Defendants refused to allow Plaintiff to return to work, despite that Plaintiff was able to do so.

56. Instead, Defendants made hurtful comments to Plaintiff about needing their psychiatrists to examine Plaintiff before they would let her return to work.

57. Defendants failed to allow Plaintiff to return to work for almost two months, until on or about October 2, 2022.

58. In or about October 2022, shortly after Plaintiff returned from FMLA/medical leave, she was informed by Defendants' management that she was being subjected to an alleged job elimination and reduction-in-force and would be terminated.

59. Plaintiff was told she could apply for other positions but that if she was not hired for another position by November 11, 2022, she would be terminated.

60. Pacovsky specifically told Plaintiff that Plaintiff was not even able to re-apply for any other positions because she was on a PIP.

61. However, HR told Plaintiff that she would be transferred to one of three available positions and that the upcoming "termination" date was a "soft date" and could be adjusted depending on the circumstances.

62. At the time Defendants informed Plaintiff of her upcoming termination, they offered her an unsolicited severance agreement, which required her to waive all of her legal claims.

63. Plaintiff did not accept or otherwise agree to the severance agreement.

64. In or about October and/or early November 2022 and thereafter, Plaintiff applied for and sought several positions for which she was qualified, including but not limited to (1) RN Patient Liason, (2) RN Hematology/Oncology, (3) Inpatient RN, (4) RN Navigator, (5) RN Healthy Beginnings and (6) RN Orthopedic/Post-Op Care; and several other positions.

65. Despite Plaintiff's strong qualifications and experience, she was not hired for any of these other positions.

66. Plaintiff continued to express interest in available nursing positions and was even willing to transfer locations or work in another city for Defendants.

67. Despite Plaintiff's efforts, she was not hired/re-hired for any other position.

68. Instead, on or about November 11, 2022, Plaintiff was informed that she was being terminated due to an alleged position elimination and reduction-in-force.

69. Although Defendants claimed that Plaintiff was being terminated due to job elimination/reduction-in-force, they hired another RN (ostensibly a non-disabled employee) to replace Plaintiff.

70. Upon information and belief, at or around the time of Plaintiff's termination, Defendants did not terminate any other RNs at any other clinics other than Plaintiff.

71. At the time of Plaintiff's termination, Defendants were experiencing a shortage of qualified nurses at their facilities.

72. Plaintiff, who was a qualified and dedicated RN, could have been hired/shifted into one of Defendants' many available positions. However, she was not.

73. Even after her November 11, 2022 termination, Plaintiff continued to apply for available positions for which she was qualified.

74. She was not hired/re-hired or otherwise offered any other positions.

75. Plaintiff believes and therefore avers that she was terminated, not hired and/or not rehired because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations; and (4) her objections to/complaints of unfair treatment as a result of her disabilities and (5) in retaliation for exercising her FMLA rights. Defendant also failed to accommodate Plaintiff's disabilities and interfered with her FMLA rights.

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
and [3] Failure to Accommodate)
- Against Defendant Entities -

76. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

77. Plaintiff suffers from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

78. Plaintiff kept Defendants' management informed of her medical conditions and need for medical leave/treatment throughout the latter part of her tenure with Defendants.

79. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times, including medical leave and other ongoing periodic time off because of her medical conditions.

80. Plaintiff was subjected to hostility and animosity due to her health and/or requests for accommodations through demeaning and/or discriminatory treatment towards her (as discussed *supra*).

81. Plaintiff expressed concerns/complaints to the aforesaid instances of discriminatory and disparate treatment to Defendants' management and HR department on several occasions, but her concerns were ignored.

82. Plaintiff was terminated from Defendants shortly after disclosing her medical conditions, requesting reasonable medical accommodations and objecting to/expressing concerns of unfair treatment as a result of her disabilities.

83. Plaintiff believes and therefore avers that she was terminated by Defendants due to (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations; and/or (4) her concerns/complaints of unfair treatment as a result of her disabilities.

84. Defendants also failed to accommodate Plaintiff's medical conditions or engage in any meaningful interactive process with Plaintiff to determine if she could be accommodated.

85. These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**([1] Interference and [2] Retaliation)**
**- Against All Defendants -**

86. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

87. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

88. Plaintiff requested leave from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

89. Plaintiff had at least 1,250 hours of service with Defendants during the year prior to her requests for medical leave.

90. Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

91. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

92. Defendants committed interference and retaliation violations of the FMLA by: (1) terminating, refusing to hire/re-hire Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her and/or not hire/rehire her for another position; (3) terminating/not rehiring Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (4) failing to properly notify and inform Plaintiff of her FMLA rights; and/or (5) engaging in conduct which discouraged Plaintiff from exercising her FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave.

93. Defendants also unlawfully refused to allow Plaintiff to return to work in or about August 2022 and then terminated her within a few weeks of her return from FMLA leave.

94. These actions as aforesaid constitute violations of the FMLA.

95. Defendants Pacovsky and Alaiyegbami are individually liable because they supervised Plaintiff, had authority over the terms and conditions or her employment and participated in and were responsible for the FMLA violations, as described herein.[2]

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

---

[2] The FMLA defines an "employer" as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). *Diehl v. Admin. Offices of Pa. Courts,* No. 4:10-CV-00071, 2010 U.S. Dist. LEXIS 144908, at *18 (M.D. Pa. 2010). The Third Circuit and Courts within the Circuit have held that the FMLA allows for the imposition of individual liability. *See, e.g., Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012)(stating that the FMLA permits individual liability when he/she exercises "supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest."); *Malik v. Wyo. Valley Med. Ctr., P.C.,* No. 3:19-CV-01547, 2020 U.S. Dist. LEXIS 108563, at *8 (M.D. Pa. 2020)(concluding that individual defendant exercised supervisory authority over Plaintiff for the purposes of finding individual liability under the FMLA); *Narodetsky v. Cardone Indus.,* 2010 U.S. Dist. LEXIS 16133, *11 (E.D. Pa. 2010) (finding that the plaintiff's allegations were sufficient to state a claim for individual liability against the defendants under the FMLA); *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 476-77 (W.D. Pa. 2008) (concluding that public officials could be held liable under the FMLA in their individual capacities); *Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814, 818 (D.N.J. 2006) (finding that "individuals such as the Executive Director of Human Resources and Administrative Services and the Superintendent of the Willingboro Public Schools may be liable under the FMLA").

  A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

  B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

  C. Plaintiff is to be awarded punitive and liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

  F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
Jeremy M. Cerutti, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  May 25, 2023